## ABE LINCOLN DANZIGER

### *v.*

## THE PITTSFIELD SHOE COMPANY.

*Opinion filed October 26, 1903.*

1. ATTORNEY AND CLIENT—*attorney to collect has no implied authority to compromise claim.* A compromise agreement to accept less than the amount of a claim, made between the debtor and the attorney employed by the creditor to collect, is not binding upon the creditor, even though the amount is in dispute, unless the debtor shows the creditor authorized the agreement or ratified it.

2. CONTRACTS—*when contract does not require delivery at a particular time.* A contract for a shipment of merchandise whereby the shipper agrees to do the best he can respecting delivery does not entitle the purchaser to damages for failure to deliver at any particular time.

3. SAME—*what may be considered by jury on subject of shipper's compliance with agreement to deliver.* In determining whether a shipper complied with his agreement to do the best he could in making deliveries, the jury may consider prior orders, pressure of business and other circumstances bearing upon the question of the shipper's ability to make deliveries.

4. SAME—*construction of contract is for the court.* The meaning of a written contract is a question of law for the court, but the question whether the contract was entered into, if the testimony is conflicting, is for the jury.

*Danziger* v. *Pittsfield Shoe Co.* 107 Ill. App. 47, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an action of assumpsit, begun on September 4, 1900, in the superior court of Cook county by the appellee against the appellant to recover an amount, claimed to be due on account of certain merchandise, consisting of shoes, alleged to have been delivered to the appellant by the appellee.

The declaration consisted of the common counts, and two special counts. In the special counts it was charged, that the appellee consigned certain goods to appellant

to be disposed of by him for commission and reward; that appellant promised to account for the same, and pay over to appellee the proceeds of the sale of said goods; that, although appellant received and sold said goods, he had made default in rendering an account of sales, and in not paying over the proceeds.

The plea of general issue was filed. The trial resulted in a verdict by the jury in favor of appellee for $3817.83. Motions for a new trial and in arrest of judgment were overruled, to which action of the court exception was taken; and judgment was entered in favor of appellee and against appellant for $3817.83, and costs. An appeal was prayed to the Appellate Court, where the judgment of the Superior court has been affirmed. The present appeal is prosecuted from such judgment of affirmance.

ISRAEL SHRIMSKI, for appellant.

BANGS, WOOD & BANGS, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Appellee is a corporation, engaged in the business of manufacturing shoes at Pittsfield in the State of New Hampshire. Appellant is engaged in the wholesale shoe business in Chicago.

It appears from the evidence, that appellee and appellant commenced their business relations in November, 1897. In that month appellant placed an order with appellee for shoes, such order being given by letter written from Chicago. A letter, written by appellant on December 28, 1897, was answered by appellee on December 31, 1897, and from that time down to at least November, 1899, appellee continued to ship goods on consignment to appellant, and appellant remitted for all goods sold at the invoice prices of the same, less seven per cent discount.

The controversy here involved arises out of transactions had between the parties from November or December, 1899, until they ceased business relations in July,

1900.    It is claimed by the appellant, that all former transactions and methods of purchase and payment for merchandise were entirely superseded by new contracts entered into subsequently to November, 1899.

The questions, arising upon this record, are much simplified by the following admission and agreement, made by appellant at the close of appellee's testimony upon the trial below, to-wit: "It is admitted and agreed that the defendant owes the plaintiff for goods the sum of $3817.83, unless the defendant is able to reduce said amount by showing off-sets or settlement." It is claimed by appellant that a full settlement and accounting were had between the parties. It was also relied upon, as a defense, by the appellant, that the appellee had failed to deliver goods to appellant according to the contract between him and appellee, and that, by reason of such default, the appellant, who had sold such goods, was unable to fill contracts made with his own customers, and, in consequence, suffered financial loss. The amount of $3817.83, being admitted by the appellant to be due for goods sold and delivered, unless the proof shows that such amount ought to be reduced by damages suffered by appellant, or unless there was a settlement of appellee's claim against appellant, there are only two questions to be here considered: First, was there a settlement? second, were damages incurred by appellant, which should be applied in reduction of the amount admitted to be due?

*First*—It is assigned as error, that the trial court excluded evidence offered by the appellant for the purpose of showing a settlement.

The contention of appellant upon this subject is, that on August 7, 1900, he gave to a person, named Bicknell, claiming to represent the attorneys of appellee, a check for $1169.13 upon the Continental National Bank of Chicago to the order of appellee's attorneys, signed by "Abe Lincoln Danziger & Co.," and having upon the face of it, just before the name of the maker, these words: "Account

Pittsfield Shoe Co." Appellant also says that, after this check was given, he returned certain goods. It is said by counsel for appellant that the claim was settled by the acceptance of the check for $1169.13 and of the goods returned.

The position, taken by appellant's counsel, is that, if the trial court had admitted the offered testimony in regard to the settlement, this case would have been brought within the rule announced in *Lapp* v. *Smith*, 183 Ill. 179, and *Ostrander* v. *Scott*, 161 id. 339. In *Ostrander* v. *Scott, supra,* it appeared that the debtor enclosed a check in a letter to his creditor, stating that it was in full of the amount claimed by the creditor, and should be returned if the creditor did not desire to accept it in full settlement of the account; and that the creditor refused to accept the check in full payment of the account, but applied it as a part payment thereof; and it was held that, inasmuch as the amount of the claim was in dispute and unliquidated, the creditor could not receive the check in part payment only, but that his receipt thereof, and use of the check, would constitute a full satisfaction of the claim. It was also there held that an account can not be considered as liquidated, so as to prevent the receipt of a less amount as payment from operating as a satisfaction, where there is a controversy over a set-off and the amount of the balance. In *Lapp* v. *Smith, supra,* where, although the items of appellees' claim were not disputed, yet a set-off was asked, and it was denied that the demand had become and was a matured liability, it was held that, the amount of the appellees' claim being in dispute, and that it was due being denied, it was an unliquidated demand; and it was further therein held, that a tender of a check for a certain sum, and notes for the balance claimed by the debtor to be due, as an offer to adjust an unliquidated disputed account, must be accepted or rejected by the creditor *in toto*, and that the creditor could not keep the check and return the notes,

and sue for the balance claimed by him to be due after crediting the proceeds of the check.

Under the doctrine announced in the two cases referred to, it is here contended by appellant, as we understand the argument of his counsel, that, although the check for $1169.13 and the amount of the goods returned were less than the amount claimed by appellee, yet that the demand was unliquidated, and that, therefore, the check and the goods, having been tendered in full settlement of the account, could not be applied in part payment of the same. In other words, the claim of appellant is, that he tendered the check and the goods in settlement of the account, and that they were accepted by appellee, and that, therefore, appellee is estopped from suing for the full amount of the account.

The trouble with the position, taken by counsel for appellant upon this branch of the case, is that the attorneys, or person claimed to represent the attorneys of appellee, who accepted the check, were not shown to have had authority to compromise the claim in behalf of appellee. The authority of an attorney to prosecute a suit does not involve authority to compromise it. Before an attorney can compromise a suit, he must have a special authority for that purpose. (*Wetherbee* v. *Fitch*, 117 Ill. 67). Where an attorney, employed to prosecute or defend a suit, makes an agreement for the settlement of the same out of court, and without making the agreement a part of the decree or judgment in the suit, the client will not be bound by such agreement, or settlement, without proof of authority in the attorney to bind the client, or acquiescence on the part of the client after knowledge of the facts; and, in such case, there is no presumption of authority, but the burden of proof rests on the party, alleging authority, to show that fact. (*Brooks* v. *Kearns*, 86 Ill. 547). "Even where attorneys are employed to sue for and collect debts of their clients, the attorneys, without special authority, can lawfully do no more than ob-

tain judgment, have execution issued, receive and receipt for the proceeds. They cannot compromise the debt, give day of judgment, receive a less amount in satisfaction, or receive in payment anything but money." (*Nolan v. Jackson,* 16 Ill. 272; *Lochenmeyer* v. *Fogarty,* 112 id. 572). Nor can it be said that there is any ratification of such contract of settlement by the client, unless it is shown that the client has full knowledge of the facts.

In the case at bar, the check for $1169.13 was handed to Mr. Bicknell, but appellant made no offer to prove that Bicknell had any authority from appellee, or from appellee's attorneys in Chicago, to adjust and settle the account for the amount of the check, or for a less amount than the full amount claimed. No offer was made to show that appellee's attorneys had such authority from the appellee. No offer was made to show that the information, that the check was accepted or received by Bicknell in alleged full settlement, was communicated to the appellee's attorneys, or to the appellee, or that either appellee or its attorneys had any knowledge of the alleged circumstances surrounding the giving of the check; or that there was any ratification by the appellee. There were no circumstances proposed to be proven, from which such ratification could be inferred. An offer was made to show that Bicknell was told that the check and goods were tendered in full settlement of the account, but no offer was made to show that such information, if given to Bicknell, was communicated to appellee's attorneys, or to appellee. The fact, that appellee accepted the check and credited it upon appellant's account, was no evidence of any ratification of a settlement. The correspondence between the parties, together with their evidence, shows clearly that appellant was in the habit of remitting checks to the appellee, and receiving credit for the same. There was no offer to show that appellee received this particular check, and gave appellant credit for it, with knowledge that it had been tendered as a

settlement of the account. For the reasons above stated, the trial court committed no error in excluding the offered evidence in regard to a settlement.

*Second*—It is claimed by appellant, that he had contracts with appellee to deliver goods to him at certain times, but that appellee failed to make such deliveries at the times agreed upon, and that, in consequence of such failure, appellant was unable to fill contracts, which he had made with his customers, to whom he had re-sold the goods, and thereby was subjected to financial loss. In other words, appellant claims, as a set-off to appellee's claim, damages incurred for failure to deliver goods at the time or times agreed upon.

The damages, alleged to have been thus incurred, are claimed to have arisen under and by virtue of two alleged orders for goods. One of these orders was given by letter, dated December 16, 1899, and the other is claimed by appellant to have been given orally in a conversation had with appellee at its factory in Pittsfield on January 23, 1900.

In the first place, in regard to the order of December 16, 1899, it is a disputed question whether the goods were to be delivered at any particular time or not; in the second place, it is a disputed question whether appellant had any right to sell the goods, embraced in the order of December 16, 1899, at advanced prices, or only at the prices at which the goods were billed to him. In his letter to appellee, dated December 16, 1899, appellant says: "Since we find that you object to making such a large order at old prices, we enclose a new order, which only covers the goods which we have actually sold and must deliver at old prices; consequently, the orders of November 10 and 25 are herewith canceled." The order of December 16, 1899, sent with the foregoing letter, was for fifty-four different lines of goods, the aggregate value being a little over $8000.00, of which, according to the testimony of the appellee, goods to the

amount of $7417.80 were actually delivered, and of which, according to the testimony of appellant, goods to the amount of $6884.42 are admitted to have been delivered. It is true that, at the bottom of the order of December 16, 1899, appellant had written a request that shipments be made, one-half January 15, 1900, and one-half February 15, 1900; but, in its reply written on December 21, 1899, to the letter of December 16, 1899, appellee said: "In answer to letter 12/16 will say that we will accept this last order of December 16 at old prices, but on all future orders we must get an advance of five cents per pair. We have lots of orders, and do not know as we can ship all of yours or not, but will do the best we can." If there was no contract on the part of appellee to deliver goods at any particular time under the order of December 16, 1899, then no damages could accrue to the appellant on account of failure to deliver at any particular time. Certainly, the letter of December 21, 1899, does not agree to deliver goods at any particular time, but simply states that appellee "will do the best we can."

As to the claim by appellant, that there was a verbal order for goods made on January 23, 1900, it is denied by appellee that there was any such order which was accepted by it. Appellant drew up such an order and left it in appellee's factory with the book-keeper, but the testimony of appellee goes to show that such order, which was not seen by the managing men of the company until afterwards, was not accepted. It is admitted by appellant, that no goods were delivered under the alleged order of January 23, 1900. If there was no contract to deliver goods in pursuance of an order given and accepted on January 23, 1900, then appellant is not entitled to any damages against appellee for failure to deliver goods within any particular time, so far as the alleged order of January 23, 1900, is concerned.

In his letter, dated December 16, 1899, to appellee, appellant states that the order of that date "only covers

the goods which we have actually sold and must deliver at old prices." "Old prices," as here used, means, as we understand it, "billed prices," that is, the prices, at which the goods had been billed to appellant. If appellant sold such goods at advanced prices, he certainly violated his agreement with appellee, inasmuch as he states that he had sold the goods, and was to deliver them to his customers at the old prices.

These questions as to whether appellee was to deliver the goods at any particular time or not, and as to whether appellant had any right to sell the goods at advanced prices, instead of selling them at the billed prices, were submitted to the jury under the instructions; so far as the contracts were in writing as embodied in the correspondence, they were interpreted and construed by the court.

Appellant complains that the third instruction, given by the trial court for the appellee, was erroneous. This instruction tells the jury that the expression, used by the appellee in its letter of December 21, 1899, that "it would do the best it could," did not mean an agreement on appellee's part to do it in a certain time, and that in determining, whether appellee failed to do the best it could, its ability, and prior orders, and pressure of business might be taken into account. Appellant also complains of instruction numbered 7, given by the trial judge of his own motion, upon the ground that therein the court decided that no contract to deliver goods at certain times was embodied in the written evidence which was introduced. The trial court did not err in placing a construction upon the written contract as embodied in the letters. It is well settled that the meaning of a written contract is a question of law, and that the court must determine the construction of such a contract. The court gives to the jury, as matter of law, what the legal construction of a written contract is, and this the jury are bound absolutely to take. (2 Parsons on Contracts,

—6th ed.—marg. p. 492; *Graham* v. *Sadlier*, 165 Ill. 95; *Keeler* v. *Clifford*, 165 id. 544; *Streeter* v. *Streeter*, 43 id. 155; *Nash* v. *Classen*, 163 id. 409; *Fleet* v. *Hertz*, 201 id. 594). Further objection is made to the third instruction upon the alleged ground that there was no evidence in regard to appellee's ability, prior orders and pressure of business. There was evidence in regard to these matters. In one of its letters to the appellant, appellee alludes to the fact, that some of its customers buy large quantities of goods and pay for them in ten days, and that it was its duty to take care of these customers before shipping to appellant. The orders of these customers were prior in date to those of the appellant. In one of its letters appellee also stated that it was a small concern, and could not make more than fifteen or eighteen cases of goods per day, so that it was unable to ship as much as appellant desired it to do. In the very letter of December 21, 1899, written in reply to appellant's letter of December 16, 1899, appellee states that it has "lots of orders and do not know as we can ship all of yours or not." These letters, and others that might be referred to, show that there was testimony in regard to the matters referred to in the third instruction. There was evidence, tending to show that the appellee delivered goods as soon as it could, and we do not think that the instruction singles out, or gives undue prominence to, any single fact, or to several facts.

Appellant criticises instruction numbered 5, given for the appellee by the trial court. By that instruction the jury were told that, "in arriving at their verdict they will take as a basis the figures $3817.83, as the amount due the plaintiff, less such sum, if any, as you shall find from the evidence the defendant, Danziger, may be entitled to deduct therefrom." It is said that this instruction disregards all mention of appellant's defense. This criticism of the instruction is not just, because it expressly tells the jury to deduct such sums as they may

find from the evidence appellant is entitled to have deducted therefrom. Moreover, instruction numbered 6, given for the appellee, told the jury to find the issues for the appellee, and assess its damages at $3817.83, "unless they find from the evidence that the defendant, by a preponderance of the evidence, has established a counter-claim or set-off due from the plaintiff to the defendant." Here was an express reference to the fact, that appellant made a counter-claim, and claimed a set-off.

Instruction numbered 7, given by the court of its own motion, is further criticised by appellant upon the ground that in this case the written contract, embodied in the letters, was not exclusively for the consideration of the court, but that evidence in regard to the alleged contracts between appellant and appellee was embraced both in the letters and in the oral testimony, and that, therefore, it should have been referred to the jury to consider both the letters and the oral testimony in determining what the contract was. The instruction expressly said to the jury: "Whether such contracts are proved by the testimony of the witnesses is for the jury to decide. If they are proved, and the plaintiff did not deliver the goods, then upon the invoice prices of such as the defendant sold, but could not deliver because they were not delivered by the plaintiff, the defendant is entitled to deduct from the claim of the plaintiff five per cent of those invoice prices. * * * If such contracts and non-delivery are proved, and if the defendant did not induce the plaintiff to believe that he was selling the goods at the invoice prices, then he would be entitled to have a deduction for the profits above the invoice prices on the goods which he did sell, but could not deliver because of such non-delivery by the plaintiff." Instruction numbered 7 thus left it to the jury to say, whether the contracts were proved by the testimony of the witnesses or not, and it further left it to the jury to decide whether appellant was entitled to the deduction claimed by him.

The question in regard to the alleged order of January 23, 1900, was whether any such order was given or not, and as that question depended upon the oral testimony, it was referred by the instructions to the jury to decide. So far as the order of December 16, 1899, and the contract embodied in the letter of that date, are concerned, they were wholly and altogether in writing. Their construction and meaning were, therefore, to be determined by the court. The contract of December 16, 1899, was not embraced in the letters and the oral testimony together, but was embraced in the letters alone. This is not a case, therefore, like the cases referred to by counsel, where the contract is partly in writing and partly oral. That this is so is admitted by counsel in his brief, where he states appellant's contention to be, "that a new contract was made, and that the 'do-the-best-we-can' proposition was, in that conversation between Mr. Green, Mr. Rand and the appellant, entirely abrogated." It is one thing to say that a written contract is abrogated by a subsequent oral contract, and another thing to say that a contract is embodied both in writing and in conversation.

The question, whether or not the order of January 23, 1900, was accepted by the appellee, was fairly submitted to the jury by the second and fourth instructions given for the appellee, and upon such question of fact the jury found against the appellant. The objections made to the seventh instruction are not well taken; and it is incorrect to say that that was an omnibus instruction, in which the court attempted to embody all the law applicable to the case. This is not a case where, as in *North Chicago Street Railway Co.* v. *Louis,* 138 Ill. 9, the trial court refused all instructions and gave an instruction of its own motion, but, here, the court, although giving an instruction of its own motion, gave other instructions both for the appellant and the appellee in accordance with requests made by both. Taking the instructions all

together, and regarding them as one charge, we think they correctly submit the questions involved to the jury.

Complaint is made that the court refused to give the fourteenth instruction, asked by the appellant upon the trial below. There was no error in refusing this instruction, inasmuch as all that was material in it in favor of appellant was embodied in the closing paragraph of the seventh instruction, given by the court of its own motion. Moreover, the instruction ignores the question whether or not appellant was at liberty to sell the goods ordered at an advance over the billed prices of appellee. For the same reason there was no error in refusing the fifteenth instruction, asked by the appellant upon the trial below.

Some objection is made to the admission of certain portions of the testimony of the president of the appellee company, and of the book-keeper of such company, in regard to the amount of goods, which were delivered to appellant under the order of December 16, 1899. The objection made to this testimony is, that the knowledge of the witnesses was based upon the showing of the ledger account of appellee. The book-keeper, who testified, kept the ledger and made the entries therein, and the president of the company testified that he managed the entire business, and did the shipping with the assistance of the book-keeper. We think it is clear from the evidence that the witnesses obtained their knowledge, not merely from the ledger account, but from their connection with the business, and the management thereof, and the shipping of goods therein. Moreover, the admission of appellant, that $3817.83 was due, except so far as such amount might be reduced by proof of off-sets or of settlement, makes such testimony as to delivery immaterial.

We find no error in the record, which would justify us in reversing this judgment. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*