(No. 31005.—

Louis J. Finley, Appellant, *vs.* William Felter *et al.,* Appellees.

*Opinion filed May 19, 1949.*

C. Victor Cardose, (Homer D. McLaren, of counsel,) both of Springfield, for appellant.

Mark O. Roberts, of Springfield, for appellees.

Mr. Chief Justice Fulton delivered the opinion of the court:

This is an appeal from the circuit court of Sangamon County seeking to reverse a decree of that court finding the issues involved herein for the defendants.

Louis J. Finley, hereinafter referred to as plaintiff, filed his suit in equity to remove certain deeds as clouds upon his title to real estate, consisting of a house and lot in the town of Auburn, Sangamon County, Illinois. All of the defendants herein are relatives of plaintiff's deceased wife. Defendants have counterclaimed for a partition of the property, which counterclaim is not in issue here.

It appears from the record that some time prior to May 20, 1933, the plaintiff and one Elizabeth Orr Finley were married. On May 20, 1933, the plaintiff and his wife conveyed by quitclaim deed the property here in question and a farm purported to be owned by the plaintiff, which is not directly involved herein, to one James A. Huddleston, who, in turn with his wife, reconveyed all of the realty involved in the transaction to the plaintiff and his wife as joint tenants. The acknowledgment of these deeds was taken by one Clarence B. Davis. The property involved in this transaction was farm property which was purportedly the separate property of Mr. Finley, and the Auburn

house here involved which was the separate property of Mrs. Finley. These deeds of May 20, 1933, were drawn by an attorney, Thomas A. Jarrett.

It further appears that Mrs. Finley died on June 8, 1939. On April 18, 1942, the plaintiff, by virtue of the joint-tenancy deed he received with his wife from the Huddlestons, sold the property. When the abstract was extended for this sale, he allegedly discovered that on August 15, 1934, a deed was recorded from Louis J. Finley and Elizabeth Orr Finley conveying the real estate in question to one Clarence E. Townsend, and on August 16, 1934, Clarence E. Townsend executed a deed for the property back to Mrs. Finley as her sole property. These deeds running from the plaintiff and his wife to Townsend and from Townsend back to Mrs. Finley are the questioned deeds in this suit.

The record also discloses that these deeds are not to be found. They were recorded in the recorder's office on August 18, 1934, and on September 8, 1934, respectively, and were withdrawn from the recorder's office by Mrs. Finley and have not been seen since that time.

In substance, the plaintiff contends that his signature on the deed from him and his wife to Townsend was a forgery, that the signature on the deed for the property to Townsend is not his, and that he did not make or deliver any deed on August 15, 1934. In support of this claim he states that the name "Louis J. Finley" could not be his genuine signature inasmuch as his name is "Lewis" and that he always used "L. J. Finley" in signing papers.

The case was referred to a master, who found the issues for the defendants herein, and the chancellor entered a decree in accordance with the master's report.

The sole question presented to this court by the pleadings and the facts in this case is whether or not the plaintiff has met the burden of proof that the deeds involved herein were forged. The answer to this question depends upon

consideration of the testimony herein and the findings of fact as set forth and approved by the chancellor.

The defendants cite *Kerr* v. *Russell,* 69 Ill. 666, and *Duncan* v. *Duncan,* 203 Ill. 461, for the proposition of law that recorded instruments are presumptive evidence of the execution, acknowledgment and delivery of such instruments, and the burden of proving a deed to be forged is upon the plaintiff. These cases further acknowledge the rule of law in this State that the record of a conveyance and a certificate of acknowledgment thereon can be overcome only by clear, convincing and satisfactory proof, the burden being upon the parties seeking to impeach such acknowledgment. The plaintiff admits the propriety of these rules, but contends that he has met the burden of proof in this case and has, in fact, proved his signature on the deed in question to be a forgery.

At the hearing before the master, the plaintiff, over the objection of defendants that the plaintiff was incompetent under section 2 of the Evidence Act, (Ill. Rev. Stat. 1947, chap. 51, par. 2,) stated that his name was spelled "Lewis" and not "Louis," but that, in any case, he had always used the name of "L. J. Finley" on all papers and deeds. Attorney Thomas L. Jarrett, the attorney who filed the original complaint in this cause on behalf of the plaintiff, but who had withdrawn prior to the hearing in the cause before the master, testified that he had been the attorney for Mrs. Finley before the marriage of the plaintiff and Mrs. Finley, and that he had prepared the original deeds in 1933, which placed the property in joint tenancy. He stated that on August 15, 1934, Mrs. Finley asked him to notarize a deed which he refused to do because Mr. Finley's signature was not genuine and Mr. Finley was not there.

James A. Huddleston, a real-estate man who had offices in the same building and on the same floor as attorneys Jarrett, Townsend and Davis, testified that in August, 1934,

he saw Mr. and Mrs. Finley in Townsend's office and had asked Townsend what he was doing with his, Huddleston's, clients. He further stated that Townsend told him that they were transferring the property in question here into the wife's name. He reports that Townsend further stated that Jarrett was using Townsend as the grantee of the deed for the purpose of transferring the property into Mrs. Finley's name. Huddleston testified later on deposition that Finley had come into his office on that day and had repeated the purpose of his visit on that date to Townsend and Jarrett.

Attorney Townsend, through whom the title was reconveyed to Mrs. Finley by the deeds in question, was called and testified that he did not recall whether plaintiff and Mrs. Finley had been in his office in 1934, but that he knew he did not draw the deeds. He could not remember the transaction, and would neither admit nor deny it.

. Attorney Clarence B. Davis, the notary public who took the acknowledgment of the deeds here in question, as well as those of the 1933 joint-tenancy transaction, testified that he did not draw the deeds. He recalled that the Finleys had talked with Huddleston and that he had frequently acknowledged papers for Jarrett and Townsend. He would not say whether he did or did not notarize the deeds. He further stated that he had no recollection of ever notarizing the immediate deeds for Mr. and Mrs. Finley to Townsend and for Townsend back to Mrs. Finley, but would say that the record spoke for itself.

It appears that the farm property, conveyed by the original deeds of May 20, 1933, consisted of about 86 acres, which was, in fact, conveyed by the plaintiff to one John H. Gosch, on August 1, 1931. Gosch reconveyed this farm property to plaintiff by deed dated July 19, 1934. Prior to that time, on July 5, 1934, the plaintiff and his wife had conveyed this farm to one Frank M. Jones. The consideration of the conveyance of the farm to Jones was satis-

faction of the plaintiff's personal debt of $3200 owed to Jones and an additional payment of plaintiff's $1500 personal debt owed to Gosch which Jones had paid. It was subsequent to these transactions involving the farm property that the deeds were purportedly made from plaintiff and his wife to Townsend and from Townsend to Mrs. Finley.

On the basis of this evidence, the master found that the signature of Finley, the plaintiff, on the deed in question was genuine, and that the plaintiff had not met the burden of proof to establish that the deed was a forgery. The decree of the court approved the findings and conclusions of the master and dismissed the complaint of the plaintiff for want of equity.

The evidence in the cause divides itself, on behalf of the plaintiff, into the testimony of two witnesses. The plaintiff's testimony, leaving aside for the moment any discussion of his competency under section 2 of the Evidence Act, is to the effect that he did not sign the deed and that the signature was not his. The other witness, Jarrett, was the attorney for the plaintiff in the filing of the complaint in this cause and had been plaintiff's attorney until some time shortly before the cause was heard by the master. Opposed to this testimony is the presumption arising from the acknowledgment, execution and delivery of the deeds, together with the testimony of Huddleston, who stated that plaintiff admitted that he and his wife visited Townsend for the purpose of having the property returned to the wife's name. Also, as found by the master, the placing of the property in joint tenancy was done under some form of implied agreement that both parties would place their individually owned property in joint tenancy at the same time. The plaintiff's property at that time was held by Gosch under a deed which was, in fact, a mortgage, and in July, 1934, to satisfy the plaintiff's debts, all of this property, which had subsequently been placed in joint ten-

ancy, was conveyed to Jones. This, the master found, gave rise to a belief that it would be the natural thing for Mrs. Finley to insist that her property be returned to her sole ownership. By placing the property in joint tenancy, along with the property held by the plaintiff, she received nothing inasmuch as the plaintiff's property was already pledged and was, in fact, deeded to satisfy plaintiff's debts.

In *Kerr* v. *Russell,* 69 Ill. 666, cited with approval in *Duncan* v. *Duncan,* 203 Ill. 461, this court reiterated the rule that the record of a conveyance and the certificate of acknowledgment could be overcome only by "clear, convincing and satisfactory proof." In that case this court pointed out that public policy, the security of titles, the peace of society demands that such a rule exist and that a strict adherence must be applied to it. We further went on to say, "The proof to sustain such a charge is required to be, however, of the clearest, strongest and of the most convincing character, and by disinterested witnesses. It shocks the moral sense of community to say, the unsupported testimony of an interested witness, who sees a fortune in his success, shall destroy the deliberate act of an officer appointed by law to do the act he certifies under the solemn sanctions of an oath he has done. Such is not the law, such is not justice and such a rule would throw land titles into chaos."

Applying this rule of law to the instant cause, we find that the most interested person in the proceeding, the plaintiff himself, has given the most direct testimony to support the allegation that the signature on the deed was forged. It cannot be said, under any stretch of imagination, that the plaintiff is a disinterested witness falling within the above-stated rule. The only support of the plaintiff's position comes from the testimony of the attorney, Jarrett, who testified that he refused the acknowledgment on the grounds that the signature on the deed in question was a forgery.

Attorney Jarrett had drawn the complaint in the instant cause and on the stand stated that he had not been paid for his work. He further stated that he hoped to be paid. Aside from his obvious interest in the case, this court has long had a rule that when an attorney furnishes, by his own testimony, evidence to help himself succeed on the trial, such evidence will be closely scanned, and, if he chooses to testify, his testimony should be given little weight. *Wright v. Buchanan,* 287 Ill. 468.

We cannot say under the facts in question and under the rules stated that the testimony for the plaintiff is that of disinterested witnesses.

This cause, on the facts, is similar to *Kerr v. Russell,* above cited. In that case there was evidence of the deed with some support from another witness who was familiar with the handwriting and who testified that the handwriting was a forgery. The deed, as here, was destroyed and could not be subjected to the scrutiny of other persons equally familiar with the handwriting. In the *Kerr case,* it was stated that it was sufficient that the grantor had deeded and acknowledged in the mode prescribed by statute and before a proper officer.

As is so often the case, the answer to the question propounded to this court depends upon the weight to be given to the evidence on behalf of either party. The rule has long been established in this State that where the master has heard the witnesses and made findings of fact upon the testimony given, and such findings have been approved by the chancellor, the reviewing court will not disturb the findings unless they are manifestly against the weight of the evidence. In *Miller v. Miller,* 315 Ill. 600, where the question involved was whether or not signatures to deeds were forgeries, we said: "This court cannot say from a full examination of the record, that the decree of the chancellor is manifestly against the weight of the evidence.

That being the state of the record, the decree must be affirmed." This language is applicable to the facts in the instant cause.

The plaintiff, however, argues that a notary certificate is impeached by the proof that the notary did not see, know or remember or have access to the grantor at the time the acknowledgment is claimed to have been made. The plaintiff apparently is relying on the testimony of the witness Davis, who testified that he could not remember the acknowledgment on the deeds in question and would not say that he did or did not make them. He further stated that he kept a little black book in which he normally made entries through the period in question of all deeds which he acknowledged and that he had searched said book and was not able to find any records of the transaction here. Using this testimony as a basis for this argument, the plaintiff cites *Lewis* v. *McGrath*, 191 Ill. 401, and *Parlin & Orendorff Co.* v. *Hutson*, 198 Ill. 389. A reading of those cases indicates a clear distinction on the fact situation from the instant cause. In *Lewis* v. *McGrath*, the testimony indicated that, during the time the grantor supposedly entered into the agreement, she had been in bed as a result of a surgical operation and was continually attended by several people. Those people testified that no person ever visited the deceased and that she had never signed or acknowledged any paper or deed or any other thing during the entire period of her illness. In *Parlin & Orendorff Co.* v. *Hutson*, the notary public testified that he had acknowledged deeds in blank for the benefit of the party set forth as grantor in the deed in question. Neither of those fact situations appears in the instant cause.

The plaintiff devotes a considerable portion of his brief to arguing that he was competent to testify in the instant cause, through the facts and circumstances of the case. In view of the result which we have reached in the instant cause, it is not necessary to consider this point. We have

given the plaintiff the benefit of all doubt and considered all testimony on his behalf and we find that he has not met the burden of proof required of him under the law of this State.

For these reasons, the decree of the circuit court of Sangamon County is affirmed. *Decree affirmed.*