FOURTH DIVISION 

March 29, 2001

No.  1-00-2151

DAVID BLUTCHER, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) 
Cook County
.

)

v. ) 

) 

EHS TRINITY HOSPITAL, ) 

) 

Defendant-Appellant and )

Third-Party Defendant-Appellee, ) 

 
 ) 

(Roseland Community Hospital, Myung Lee, M.D.,
 )

Earl Fredricks, M.D., Hugh Russell, M.D., and
 )

Subodh Mohindra, M.D., )

)

Defendants; )

) The Honorable

Roseland Community Hospital, ) Philip L. Bronstein,

) Judge Presiding.

Third-Party Plaintiff-Appellee). )

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court granting plaintiff's petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1998)) and vacating dismissals pursuant to a prior settlement agreement.  The issues raised on appeal are (1) whether the trial court abused its discretion in granting plaintiff's section 2-1401 petition by vacating the dismissals entered into by the parties' attorneys pursuant to a settlement agreement; and (2) whether the relief granted against Trinity was an abuse of the court's discretion when plaintiff's proper remedy was against his agent, the attorney.

In July 1995, plaintiff David Blutcher went to the emergency room at Roseland Community Hospital (Roseland) due to chest pains.  After being treated at Roseland, Blutcher was transferred to EHS Trinity Hospital (Trinity).  When Blutcher was admitted at Trinity, his initial EKG revealed that he was having a myocardial infarction.  He remained in the emergency room for approximately 23 hours before being transferred to the intensive care unit (ICU).  He did not receive a thrombloytic infusion for approximately 1½ hours after arriving at Trinity and did not see a cardiology consultant until 24 hours after his admission.  Blutcher alleges that due to the negligent actions of the Trinity staff, he suffered a massive heart attack and later a stroke, which has rendered him completely disabled. 

As a result of Blutcher's injuries, he filed a medical malpractice action against Trinity, Roseland, and four physicians – Myung Lee, M.D., Earl Fredricks, M.D., Hugh Russell. M.D. and Subodh Mohindra, M.D..

Blutcher hired attorney Stuart Bobrow to prosecute his claim.  A complaint against the defendants was filed on July 1, 1997.  During the pendency of the lawsuit, Blutcher would call Bobrow to see how the lawsuit was proceeding, and personally met with him twice during the summer of 1999.  Throughout the proceedings, Bobrow continued to reassure Blutcher that the lawsuit was going well and that it would "run its course."

However, on December 18, 1999, Blutcher received an amended complaint from Bobrow which no longer included Trinity as a defendant and called him that same day and asked him why Trinity was not included in that complaint.  During this conversation, Bobrow confessed that he had settled with Trinity for $200,000 without Blutcher's authorization back in December 1998 and kept the money.  Subsequent to this conversation, Bobrow left several telephone messages with Blutcher asking him not to hire another attorney and admitting that he did not have authority to settle the case.  He also told Blutcher that he was having problems with drug abuse during the time of the settlement but that he was currently not taking any drugs and pleaded with Blutcher not to report him because his law license would be taken away.

Blutcher discovered that in November 1998, Bobrow and the attorney for Trinity entered into arms-length settlement discussions over the phone.  Bobrow informed Trinity's attorney that he wanted a settlement check issued on a "rush basis" due to the impending holiday season.  In December 1998, Trinity agreed to settle the case for $200,000, and a check was tendered, which was made out to Blutcher and Bobrow.  In exchange, Trinity received a "covenant not to sue" purportedly signed by Blutcher and notarized by a Theresa Lynch, a notary public, who certified that Blutcher was personally known to her and that she had acknowledged his signature in her presence.

Bobrow also signed a "stipulation to dismiss" Blutcher's claim against Trinity only.  On December 24, 1998, an order was entered, however, which provided that the entire case be dismissed against all the defendants, with prejudice.  This error went undiscovered until May 1999.  In an attempt to correct the error, Bobrow appeared before the court on May 7, 1999, to request that the record be corrected to reflect the parties' true intentions of dismissing the case against Trinity only.  None of these documents, neither the settlement order nor the dismissal order, were ever submitted to any of the other defendants to this action.

After learning about Trinity's settlement, Roseland requested leave to file a third-party action against Trinity for contribution.  Trinity filed a motion in opposition to Roseland's contribution complaint and attached an affidavit from Bobrow certifying that Blutcher had purportedly signed the "covenant not to sue," a verification that the statements made in the affidavit were true and correct, and a transcript of the May 7, 1999, hearing.

On June 28, 1999, the court granted Roseland's motion for leave to file a third-party contribution complaint.   However, on July 2, 1999, the court entered a new order vacating the order of December 24, 1998, dismissed the case against Trinity, with prejudice, and dismissed Roseland's contribution action against Trinity, with prejudice.

Blutcher subsequently hired a new attorney, and on February 22, 2000, he filed a motion pursuant to section 2-1401 (735 ILCS 5/2-1401 (West 1998)).  He requested that the court vacate the order dismissing Trinity as a defendant, vacate the settlement agreement, and reinstate the case against Trinity.  Blutcher explained to the court that he did not learn of the settlement agreement until December 1999, that the case was settled without his authorization, that he had never signed any of the settlement documents or releases, and that he never received any of the settlement funds.  He also attached a transcript of the telephone messages Bobrow left on his answering machine and an affidavit stating that he knew nothing about the settlement or the dismissal of Trinity from the lawsuit, and that he had not signed any documents or received any monies from the settlement.

Trinity filed a response to Blutcher's petition but did not make any discovery requests, did not submit any counteraffidavits and did not request an evidentiary hearing.

On June 7, 2000, the trial court granted Blutcher's section 2-1401 petition.  On June 27, 2000, Trinity filed the instant appeal.

Trinity's first issue on appeal is whether the trial court abused its discretion in granting plaintiff's section 2-1401 petition. 

Section 2-1401 of the Illinois Code of Civil Procedure provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated "after 30 days from the entry thereof."  
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 220, 499 N.E.2d 1381, 1387 (1986).  The proceeding is instituted by filing a petition "supported by affidavit or other appropriate showing as to matters not of record."  735 ILCS 5/2-1401(b) (West 1998).  Like a complaint, the petition must be legally sufficient in affirmatively setting forth specific allegations supporting the right to relief.  
Smith
, 114 Ill. 2d at 220-21, 499 N.E.2d at 1386.  The purpose of a section 2-1401 petition is to bring before the trial court facts not appearing in the record which, if known to the trial court at the time judgment was entered, would have prevented the judgment.  
Ostendorf v. International Harvester Co.
, 89 Ill. 2d 273, 284, 433 N.E.2d 253, 258 (1982);  
Klein v. Steel City National Bank
, 212 Ill. App. 3d 629, 636, 571 N.E.2d 751, 756 (1991).  

A section 2-1401 petition may be granted solely on the basis of the affidavits supporting and opposing the petition if they do not controvert one another.  
Ostendorf
, 89 Ill. 2d at 285-86, 433 N.E.2d at 259.  However, an evidentiary hearing is required if the central facts of a section 2-1401 petition are disputed.  
Ostendorf
, 89 Ill. 2d at 286, 433 N.E.2d at 259.  Central facts are those that are sufficient to support an order vacating the judgment, not those that must be proven to succeed in the underlying action on its merits.  
Smith v. Cole
, 256 Ill. App. 3d 806, 810, 632 N.E.2d 31 (1993).  

Under section 2-1401,  the moving party must set forth specific factual allegations supporting each of the following elements by a preponderance of the evidence:  (1) the existence of a meritorious defense or claim;  (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.  
Smith
, 114 Ill. 2d at 220-21, 499 N.E.2d at 1386.  For purposes of this appeal, the only element in dispute is whether plaintiff has presented a meritorious defense or claim.  To prove the existence of a meritorious defense or claim, a petitioner must allege facts that would have prevented entry of the judgment if they had been known by the trial court.  
Physicians Insurance Exchange v. Jennings
, 316 Ill. App. 3d 443, 457, 736 N.E.2d 179, 191 (2000).  

Whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented.  As such, a court of review is justified in disturbing the judgment of the circuit court only if it finds that the court abused its discretion.  
Smith
, 114 Ill. 2d at 221, 499 N.E.2d at 1386.

First, we note that there seems to be a disagreement between the parties concerning the controlling issue in this case.  Trinity argues that the underlying issue is whether a signed notarized settlement agreement can be defeated by a subsequent affidavit, by plaintiff, stating that he did not sign the agreement.  Blutcher, on the other hand, contends that the issue is one of consent, namely, whether a client is bound by an unauthorized settlement entered into by his attorney.  We find that the controlling issue is whether Blutcher is bound by the settlement agreement entered into by Bobrow.

The case law in Illinois is clear on this issue.  The authority of an attorney to represent a client in litigation is separate from the authority to compromise or settle a lawsuit.  The attorney must receive the client's express authorization to do so.   
Brewer v. National R.R. Passenger Corp
., 165 Ill. 2d 100, 105, 649 N.E.2d 1331, 1334 (1995); 
Danziger v. Pittsfield Shoe Co.
, 204 Ill. 145, 149-50, 68 N.E. 534, 535-36 (1903).  "Where a settlement is made out of court and is not made a part of the judgment, the client will not be bound by the agreement without proof of express authority. *** [T]he burden of proof rests on the party alleging authority to show that fact."  
Brewer
, 165 Ill. 2d at 105-06, 649 N.E.2d at 1334; 
Danziger
, 204 Ill. at 149, 68 N.E. at 536.  However, if the settlement is stated on the record in open court or incorporated in the judgment, authority to settle is presumed unless rebutted by affirmative evidence that authority is lacking.  
Szymkowski v. Szymkowski
, 104 Ill. App. 3d 630, 633, 432 N.E.2d 1209, 1211 (1982).

Brewer
, an Illinois Supreme Court case, is instructive on this issue.  In that case, an employee brought a personal injury action against his employer.  
Brewer
, 165 Ill. 2d at 102, 649 N.E.2d at 1332.  The trial court held a pretrial settlement conference, in chambers, where only the judge and the parties' attorneys were present.  Plaintiff remained in court during these negotiations.  
Brewer
, 165 Ill. 2d at 102-03, 649 N.E.2d at 1332.  While in chambers, the attorneys reached a settlement for $250,000, plus an additional $50,000 if plaintiff would undergo back surgery within six months of the dismissal order.  
Brewer
, 165 Ill. 2d at 103, 649 N.E.2d at 1332.  The parties were in disagreement, however, over whether they agreed that plaintiff would tender his resignation as part of the settlement.  
Brewer
, 165 Ill. 2d at 103, 649 N.E.2d at 1332.  

After the settlement negotiations, the attorney for plaintiff left the judge's chambers to confer with plaintiff regarding the proposed settlement.  With plaintiff's agreement, the trial court dismissed the lawsuit against defendants with prejudice, and incorporated only the agreement to pay into the settlement.  
Brewer
, 165 Ill. 2d at 103, 649 N.E.2d at 1332-33.

Nine days later, the defendant returned to court to enforce the settlement agreement, which included the issue of plaintiff’s resignation.  However, plaintiff’s attorney objected, stating that the issue of plaintiff’s resignation was never agreed to, nor did plaintiff give him express authority to compromise his job and, therefore, plaintiff argued, the dismissal order should be vacated.  
Brewer
, 165 Ill. 2d at 103, 649 N.E.2d at 1333.  Remembering that the issue had been discussed in chambers, the trial judge assumed that plaintiff’s attorney had authority from plaintiff to compromise his job, denied plaintiff’s motion to vacate the dismissal order, and enforced the settlement agreement.  
Brewer
, 165 Ill. 2d at 104, 649 N.E.2d at 1333.  The appellate court affirmed the trial court's order on appeal.  
Brewer
, 165 Ill. 2d at 104, 649 N.E.2d at 1333.

The supreme court reversed, however, stating that "the record contains affirmative uncontradicted evidence that plaintiff did not expressly authorize his attorney to agree that plaintiff would quit his job."  
Brewer
, 165 Ill. 2d at 107, 649 N.E.2d at 1334.  Although the attorney of record stated in open court that the parties had agreed to a settlement, the "record contain[ed] affirmative evidence, in the form of affidavits, that plaintiff did not expressly authorize his attorney to agree that plaintiff would quit his job."  
Brewer
, 165 Ill. 2d at 106, 649 N.E.2d at 1334.

In this case, the settlement negotiations between Bobrow and Trinity's attorney, as well as the settlement itself, were reached out of court.  Although the settlement was made a part of the record
, the relevant inquiry is still whether Bobrow had the express authority to settle this case.  The record reveals that he did not.

Trinity argues on appeal that 
Brewer
, and other cases involving oral settlement agreements, are distinguishable from the case at bar.  However, oral agreements, just as written agreements, are binding so long as there is clearly an offer and acceptance to compromise, and there is a meeting of the minds as to the terms of the agreement.  
Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.
, 42 Ill. App. 3d 865, 868, 356 N.E.2d 837, 840 (1976).  Furthermore, the court's refusal to enforce the agreement in 
Brewer
 was not due to the fact that it was oral instead of written.  The 
Brewer
 court reversed the trial court because it found that the attorney lacked the requisite authority to compromise plaintiff’s job as part of the settlement.  
Brewer
, 165 Ill. 2d at 106, 649 N.E.2d at 1334.  The connection between 
Brewer
, its predecessors and the case at bar is that an attorney's authority to represent a client in litigation is separate from the authority to compromise or settle the lawsuit.  
Brewer
, 165 Ill. 2d at 105, 649 N.E.2d at 1334.

Trinity further argues that because the settlement agreement was purportedly signed by Blutcher, the attorney's authority to settle becomes a nonissue.  This assertion is incorrect. Trinity cites 
Kazale v. Kar-Lee Flowers
, 185 Ill. App. 3d 224, 541 N.E.2d 219 (1989), in support of its position that Bobrow had authority to settle this case and, therefore, the burden of proof was on Blutcher to show that the agreement was invalid.

In 
Kazale
, the court made a clear distinction between cases in which the attorney lacked the authority to settle and cases where authority to settle was presumed, such as situations in which the client had actually signed the settlement agreements.  The court stated that "the reason the signatures in 
Blaylock
 and 
Madison
 distinguish those cases from this case and 
Danziger
 is because the signatures made the question of whether the attorney had authority to settle a nonissue; 
the client had himself settled the case, not the agent
."  (Emphasis added.)  
Kazale
, 185 Ill. App. 3d at 229, 541 N.E.2d at 222.  In 
Blaylock v. Toledo, Peoria & Western R.R. Co.
, 43 Ill. App. 3d 35, 356 N.E.2d 639 (1976), the attorney's authority to settle was a nonissue because the client was present during settlement negotiations, agreed to the settlement and actually signed the release.  As such, it was the client's burden of proof to show the invalidity of the settlement agreement.  In 
Madison Associates v. Bass
, 158 Ill. App. 3d 526, 511 N.E.2d 690 (1987), the client signed the settlement agreement.  As such, it was the client's burden of proof to show that the settlement was invalid.

In the case at bar, the very basis of Blutcher's claim is that he did not sign the settlement agreement or the release.  He stated in his affidavit that he was completely unaware of ongoing settlement negotiations nor was he aware of the consummated agreement.  Therefore, similar to 
Brewer
, this case is also distinguishable from 
Blaylock
, 
Madison
, and 
Szymkowski
 because, although the settlement was made a part of the record, Bobrow lacked the requisite authority to settle the case.  This lack of authority was supported by Blutcher's affidavit and the transcript of messages left by Bobrow.

Trinity further argues that a notarized release from liability cannot be defeated solely by plaintiff's subsequent denial, by way of an affidavit, that he signed the document.  It claims that since the settlement agreement was documented by several writings, the burden of proof shifted to plaintiff to prove by "clear and convincing evidence" that document was invalid.  Trinity cites 
Witt v. Panek
, 408 Ill. 328, 97 N.E.2d 283 (1951), 
Krueger v. Dorr
, 22 Ill. App. 2d 513, 161 N.E.2d 433 (1959), 
Hurd v. Wildman, Harrold, Allen & Dixon
, 303 Ill. App. 3d 84, 707 N.E.2d 609 (1999), and 
Finley v. Felter
, 403 Ill. 372, 86 N.E.2d 188 (1949), in support of its position.  All of these cases, however, are distinguishable from the case at bar.

Witt
, did not concern an attorney's lack of authority to settle a case, but concerned the alleged forgery of a deed.  The supreme court ruled in that case that a party alleging that a signature on a deed is forged must establish his burden of proof by clear, convincing and satisfactory evidence, by disinterested witnesses.  
Witt
, 408 Ill. at 333, 97 N.E.2d at 285.  
Krueger
, involved a deed as well and a note that was actually signed by the party drafting the instrument.  
Krueger
, 22 Ill. App. 2d at 527, 161 N.E.2d at 441.  In 
Hurd
, although plaintiff was contesting the validity of a release due to duress, he actually signed the release.  Therefore, plaintiff had the burden of proving, by clear and convincing evidence, that the release was invalid.  
Hurd
, 303 Ill. App. 3d at 89, 707 N.E.2d at 613.  Finally, 
Finley
 also concerned the forgery of a deed.  In that case, the supreme court reiterated the longstanding rule with regard to deeds, which is that "the record of a conveyance and the certificate of acknowledgment could be overcome only by clear, convincing and satisfactory proof."  
Finley
, 403 Ill. at 378, 86 N.E.2d 190.

Additionally, the burden of proof in cases such as the one at bar, wherein the attorney's authority to settle is at issue, is different from the burden of proof in cases involving alleged forgery of deeds.  In this case, once the plaintiff has set forth specific factual allegations supporting a section 2-1401 petition, by a preponderance of the evidence, the burden of proof shifts to defendant to show "authority in the attorney to bind the client, or acquiescence on the part of the client after knowledge of the facts."  
Kazale
, 185 Ill. App. 3d at 228, 541 N.E.2d at 222.

Since plaintiff has established a meritorious defense (by his affidavit and the transcript of the telephone messages) that his attorney did not have authority to settle this case, that he did not consent to nor was aware of the settlement, and that he did not sign the release, the burden of proof shifted to Trinity to show the validity of these documents.  See 
Kazale
, 185 Ill. App. 3d at 228, 541 N.E.2d at 222;  
Danziger
, 204 Ill. at 149, 68 N.E. at 536;  
Brewer
, 165 Ill. 2d at 105-06, 649 N.E.2d at 1334.

Section 2-1401(b) clearly states that "[T]he petition must be supported by 
affidavit
 or 
other appropriate showing
 as to matters not of record."  (Emphasis added.)  735 ILCS 5/2-1401(b) (West 1998).  As such, we must reject Trinity's assertion that Blutcher's affidavit should be rejected as hearsay.  Trinity's reliance on 
People v. Perkins
, 260 Ill. App. 3d 516, 636 N.E.2d 780 (1994), that an affidavit to the content of a conversation with a third party, when offered to prove the truth of the third party's statements, is hearsay, is misplaced.  The reason for the court's rejection of the affidavit in that case as hearsay was because it was tendered by someone who did not have firsthand knowledge of the factual allegations contained therein.  The court specifically stated: "This affidavit must be a sufficient and competent affidavit [citation.] *** made by a person having firsthand knowledge of the factual allegations. [citation.]  Therefore, an affidavit based on the hearsay of an attorney is generally not sufficient to support a section 2-1401 motion."  
Perkins
, 260 Ill. App. 3d at 518, 636 N.E.2d at 782.  In this case, Blutcher's affidavit was obviously based upon firsthand knowledge, supported by the transcript of the messages to which he refers. 

The record indicates that Trinity did not submit any counteraffidavits to rebut plaintiff's affidavit.  See 
Ostendorf
, 89 Ill. 2d at 285-86, 433 N.E.2d at 259.  Therefore, we do not agree that the trial court abused its discretion by relying on Blutcher's affidavit.

Finally, although Trinity requests an evidentiary hearing on appeal, such a request was never made in the court below.  An evidentiary hearing is mandated where the central facts are controverted.  
Ostendorf
, 89 Ill. 2d at 286, 433 N.E.2d at 259.  "The central facts are those which are sufficient to support an order vacating the judgment, 
not 
those which must be proven to succeed in the underlying action on its merits." [Emphasis added.]  
Smith v. Cole
, 256 Ill. App. 3d 806
, 810, 632 N.E.2d 31, 34 (1993).  The central fact of whether Bobrow had express authority to settle has not been controverted by Trinity.  Furthermore, "[w]hen a party to a section 2-1401 petition participates in a hearing based solely upon the pleadings, affidavits, and arguments of counsel without requesting an evidentiary hearing, we deem the right to such a hearing waived." 
Smith
, 256 Ill. App. 3d at 810, 632 N.E.2d at 35.  As such, Trinity has waived its right to an evidentiary hearing. 

Trinity's second argument on appeal is that even if fraud on the part of plaintiff's attorney could be established by plaintiff's affidavit, the relief granted against Trinity was an abuse of discretion when plaintiff's proper remedy was against the agent that he clothed with authority to act on his behalf, and not the innocent defendant who was defrauded out of $200,000 by the plaintiff's agent.  Trinity asserts that as an innocent "victim bilked out of $200,000," it cannot, in equity, be required to bear the loss occasioned by the conduct of plaintiff's attorney.  Trinity relies on 
Wabash Independent Oil Co. v. King & Wills Insurance Agency
, 248 Ill. App. 3d 719, 618 N.E.2d 1214 (1993), for the proposition that under the doctrine of "apparent agency" a principal is liable for the fraud perpetrated on an innocent victim by its apparent agent.

In 
Wabash
, we reasoned that "[a] principal who has placed an agent in a situation where he may be presumed to have authority to act is estopped as against third persons from denying the agent's apparent authority."  
Wabash
, 248 Ill. App. 3d at 724, 618 N.E.2d at 1218.  However, as previously stated, this case does not involve a situation in which there is presumed authority to act.  Although the authority of an attorney to represent a client is presumed, the authority of an attorney to settle is not presumed, and cannot be done without express authorization.  
Brewer
, 165 Ill. 2d at 106, 649 N.E.2d at 1334.  Furthermore, even if Trinity's theory of "apparent agency" were applied in this case, the first element – the principal's consent to or knowing acquiescence in the agent's exercise of authority – is lacking.  See 
Wabash
, 248 Ill. App. 3d at 724, 618 N.E.2d at 1217.  

With regard to the $200,000 check tendered by Trinity, our supreme court in 
Danziger
 addressed a similar situation.  In 
Danziger
, the appellant also tendered a check as a part settlement.  The appellant argued that since the appellee's attorney accepted the check, the appellee was estopped from now suing for the full amount of the check.  
Danziger
, 204 Ill. at 149, 68 N.E.2d at 535.  The supreme court rejected this argument.  The court reasoned that "[t]he trouble with the position taken by counsel for appellant *** is that the attorneys, or person claimed to represent the attorneys of appellee, who accepted the check, were not shown to have had authority to compromise the claim in behalf of appellee."  
Danziger
, 204 Ill. at 149, 68 N.E.2d at 535.  It is true that the amount of the check tendered by Trinity is far greater than the amount in 
Danziger
.  However, we are compelled to adhere to the supreme court's precedent in 
Danziger
.

The equitable principles that Trinity implores us to apply in this case would require us to ignore the standard of our review in this case.  We cannot disturb the findings of the trial court unless there has been an abuse of discretion.  
Smith
, 114 Ill. 2d at 221, 499 N.E.2d at 1386.  Based upon the foregoing, we cannot say that an abuse of discretion has occurred in this case.

We must keep in mind that the very purpose of a section 2-1401 petition is to bring before the trial court facts that, if known at the time judgment was entered, would have prevented the judgment.  
Ostendorf
, 89 Ill. 2d at 284, 433 N.E.2d at 258; 
Klein v. Steel City National Bank
, 212 Ill. App. 3d 629, 636, 571 N.E.2d 751, 756 (1991).  As the trial judge stated, had he known that the settlement agreement was entered into without the attorney's express authority to do so, judgment would not have been entered dismissing Trinity from the lawsuit.

Affirmed.

HOFFMAN and BARTH, JJ., concur.