**Donchii MALONE, Plaintiff–Appellant,**

v.

**Salvador A. GODINEZ, Warden and Joseph Blaha, Defendants–Appellees.**

**No. 02–1431.**

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 18, 2003.*

Decided Feb. 18, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, MANION, and WILLIAMS, Circuit Judges.

## ORDER

Illinois prisoner Donchii Malone appeals the district court's judgment enforcing a purported settlement agreement in his civil rights case against Salvador Godinez, the former warden of Stateville Correctional Center, and Joseph Blaha, a prison guard. For the reasons explained below, we reverse and remand.

The extraordinary facts giving rise to this lawsuit, as alleged by Malone in his complaint, began shortly after he was transferred to Stateville. In January 1995 a number of inmates informed Malone that there was a $10,000 "hit" out on his life. Upon learning this information, Malone spoke with then-Warden Godinez and asked to be transferred or at least placed in protective custody. Godinez refused the requests, telling Malone that he could place him in protective custody only if he knew who was going to attack him (which Malone did not know). A week later, while Malone was on his way from his cell to the prison's theater building, he was attacked by four inmates. Two inmates with "semi-covered faces" came at him with homemade knives ("shanks") and a third came up behind him and began stabbing him in the back. These initials stabs failed to puncture Malone's skin because of the "hand-made stab proof vest" he was wearing. But when Malone attempted to flee, his attackers caught up with him and stabbed him around a dozen times, leaving him with a number of puncture wounds. Malone eventually freed himself from his attackers, and when he was around twenty feet away they ceased pursuing him. At this point a prison guard, Blaha, began firing his gun–at Malone, striking him once through his right bicep.

In April 1996 Malone filed this lawsuit against Godinez and Blaha, alleging that Godinez was recklessly indifferent to his safety and that Blaha used excessive force, both in violation of the Eighth Amendment. One year later counsel was appointed to represent Malone, and more than two years after that–in September 1999–new counsel, Anthony Montemurro, was appointed to represent him. Eventually a trial date was set for August 7, 2001.

According to Malone, Montemurro met with him at Stateville sometime between mid-June and mid-July of 2001 to prepare for a trial and to discuss the possibility of settling the case. During this meeting, Montemurro told Malone that the defendants had filed a "victim impact statement," which meant that Malone would be entitled to keep only $500 of any award he received and the rest would go to the family of the victim of his crime. In light of this information, Malone told Montemurro he would agree to settle if he were given the following: (1) $500; (2) transfer to a medium security prison; (3) an industry job at his new prison; (4) restoration of good-time credits; and (5) some type of "legal document" protecting him from retaliation. According to Malone, he received a telephone call from Montemurro about a week later informing him that the defendants had agreed to (1) pay him $500; (2) restore his good-time credits; (3) transfer him to a new prison under construction when it was completed; and (4) give him an industry job if available, or else give him a choice of available jobs.

On July 27 attorneys for the parties informed the court that they had reached an agreement to settle but that they needed time to consummate the settlement in writing. The district court stayed the case for 60 days, informing the parties that within that time they should either file a stipulation for dismissal (once they finalized the settlement) or a motion to lift the stay (should they be unable to settle). On August 16 the defendants sent Montemurro a written agreement offering Malone a transfer to the new prison when it was built and placement on a waiting list for a prison job in exchange for his settling the case. Malone received a copy of this agreement on September 18. On September 25 Malone mailed a motion to lift the stay to the district court along with an affidavit asserting that he did not and would not agree to the terms in the written agreement, that he agreed and would agree to different terms, and that he never gave Montemurro the authority to make such a deal as that contained in the written agreement. On that same day, Montemurro filed a motion with the court seeking an extension on the 60–day stay until November 15, asserting that "the parties have reached a settlement agreement and general release," but that due to his schedule he and Malone "have been unable to meet to discuss and finalize the agreed settlement and general release." According to Malone, he was unaware that Montemurro had filed this motion. On November 13 Montemurro filed a motion to have a pretrial hearing stating that "[t]he Plaintiff has rejected the offer made by the Assistant Attorney General."

On December 7 the defendants filed a motion to enforce the settlement agreement, contending that the parties made a valid oral agreement in July and agreed to the terms in the unsigned written agreement. On January 22, 2001, Malone filed a response and objection to the defendants' motion, asserting again that he did not agree to this settlement and referring the court to his previous objection. On January 29 the district court, without holding an evidentiary hearing, entered an order granting the defendants' motion and a judgment dismissing the case with prejudice. After Malone filed this appeal, the district court denied a motion by Malone to reconsider and granted Montemurro's motion to withdraw as appointed counsel.

On appeal Malone argues again that he did not agree to the terms in the settlement agreement and that he did not expressly authorize Montemurro to do so. The defendants argue that a valid oral agreement was created and that Malone authorized Montemurro to enter into it. State contract law (in this case Illinois) governs, *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir.2002), and an oral settlement agreement is valid so long as there is an offer, acceptance, and a meeting of the minds on all material terms, *see Blutcher v. EHS Trinity Hosp.*, 321 Ill.App.3d 131, 254 Ill.Dec. 106, 746 N.E.2d 863, 870 (Ill.App.Ct.2001); *Lynch*, 279 F.3d at 490. When a settlement agreement occurs out of court and outside of the client's presence, as the defendants contend took place here, the agreement is valid only if the client expressly authorized the client's attorney to enter into the agreement. *Brewer v. Nat'l R.R. Passenger Corp.*, 165 Ill.2d 100, 208 Ill.Dec. 670, 649 N.E.2d 1331, 1334 (Ill.1995); *Blutcher*, 254 Ill.Dec. 106, 746 N.E.2d at 868; *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 1000 (7th Cir.2001). Such express authority will not be presumed, and the burden is on the defendants to show that Malone expressly authorized Montemurro to enter into the settlement agreement. *Brewer*, 208 Ill. Dec. 670, 649 N.E.2d at 1334; *Higbee*, 253 F.3d at 1000.

The district court neither made an explicit finding that express authority existed

nor gave reasons to support such a conclusion. And based on the record before us, we fail to see how the defendants could have met their burden. The defendants point to the representation by the parties in July that prompted the judge to stay the case for 60 days and Montemurro's motion seeking to extend the stay. Although both of these incidents suggest that some type of agreement was reached, neither of these incidents show that Malone authorized Montemurro to enter into it. Montemurro's motion to extend the stay is at best ambiguous because, while it does say that an agreement had been reached, it also says that Montemurro had not been able to meet with Malone to discuss and finalize it. The other evidence in the record is two (three, counting the motion to reconsider) uncontradicted responses with supporting affidavits by Malone–in response to first receiving the agreement and in response to the motion to enforce it–asserting that he neither agreed nor authorized Montemurro to agree to such terms. Conspicuously missing from the record is any explanation by Montemurro–the only other person who knows what terms were relayed to Malone and what Malone authorized him to do–as to what occurred. Therefore, the district court erred in enforcing the settlement agreement without an affirmative showing by the defendants that Malone expressly authorized Montemurro to enter into it.

Accordingly, we REVERSE the district court's judgment and REMAND for further proceedings consistent with this order.