Dorothy L. Krueger, Plaintiff-Appellee, v. Daniel M. Dorr, Grace E. Dorr, his wife, and Chicago Title and Trust Company, Trustee under Trust Deed recorded in the Office of the Recorder of Deeds of DuPage County, Illinois as Document No. 587791, Defendants.

Gen. No. 11,224.

Second District, Second Division.

October 1, 1959.

Released for publication October 20, 1959.

514

515

 

Jesse H. Brown, of Chicago, for appellants.

Whitty & McGah, of Chicago, for appellee.

JUSTICE CROW delivered the opinion of the court.

This is a suit filed in January, 1956, by the plaintiff, Dorothy L. Krueger, to foreclose a second mortgage trust deed on certain real estate in Elmhurst, Illinois allegedly executed by the defendants Daniel M. Dorr and Grace E. Dorr, his wife, on August 30, 1949 to secure a note of even date, payable to bearer, in the original principal amount of $5,000 payable $60 or more per month, beginning December 1, 1949, upon which certain payments ($240) had been made, leaving an alleged unpaid principal balance of $4,833.57, with interest at 6% from March 1, 1950 (the date of the last payment) to November 1, 1952, (the date the final payment was due), and at 7% from November 1, 1952.

The complaint, so far as now material, alleges that the note and second mortgage trust deed were originally given to Superior Home Builders, Inc., a corporation, as, or to secure an indebtedness for, a part of the purchase price of the real estate, located at 169 Grace Avenue, Elmhurst, and that the note and second mortgage trust deed were thereafter sold by Superior

Home Builders, Inc. to the plaintiff herein, for value—the plaintiff purchased the same—before any payment was due thereon. Copies of the purported note and second mortgage trust deed were attached as exhibits to the complaint.

The other defendant, Chicago Title and Trust Company, is the trustee under the alleged second mortgage trust deed for the benefit of the holder of the note.

The answer of the defendants Daniel M. Dorr and Grace E. Dorr, his wife, so far as now material, denies that they were indebted to Superior Home Builders, Inc. for $5,000 on August 30, 1949; denies that they executed the note and second mortgage trust deed; alleges that the signature of the defendant Grace E. Dorr allegedly appearing on the note and trust deed is not her true signature, was not affixed thereto by her or with her consent, knowledge or authority, that she has no knowledge with reference to the execution thereof, and that she did not appear before the Notary Public who purports to have acknowledged her signature to the trust deed; and denies the plaintiff purchased the note and second mortgage trust deed or is a bona fide holder thereof. They admit that payments of $240, being four $60 monthly installments, have been made on the note, but state that they have no knowledge as to the application thereof; they deny they have defaulted in making payments on the note, or that they are legally obligated to make payments thereon, or are indebted to the plaintiff in any sum, or that the plaintiff is entitled to any relief; and they ask that the note and second mortgage trust deed be found to be null and void.

The cause was referred to a Master in Chancery, and, after evidence taken, he found in favor of the plaintiff on all points, and overruled the objections of the defendants Dorr to the Report.

517

The Chancellor thereafter overruled the exceptions of the defendants Dorr to the Master's Report, approved and confirmed the Report, and a decree of foreclosure and sale was entered, from which this appeal is taken by them.

It appears that Daniel M. Dorr and Grace E. Dorr, as the purchasers, signed a purported written contract dated August 30, 1949, to purchase the property from Superior Home Builders, Inc., as the seller, the contract providing that the purchasers would pay the sum of $28,000 as the purchase price—$4,000 earnest money upon execution of the contract, a note for $5,000, and the balance of $19,000 as work on the building progressed, the purchasers either to place that $19,000 balance in escrow or obtain a mortgage loan therefor, and the escrowee or mortgagee to pay such balance to the seller. The defendants Dorr admitted they signed that contract but said they signed it in blank. The defendants Dorr apparently took title to the premises about August 30, 1949, and on the same day executed a first mortgage loan application, which recited $28,000 as the purchase price for the property, and a first mortgage for $19,000 to the Lawn Savings and Loan Association of Chicago, securing a note of like amount of even date, and a letter of authorization to the mortgagee to disburse the funds to Superior Home Builders, Inc., or on its orders. That first mortgage and note are not in issue here, although they appear in the evidence, and the defendants Dorr admit signing those instruments—the application, note, mortgage, and letter of authorization—relating to that $19,000 first mortgage, which represented that much of the purchase price under their contract with Superior Home Builders, Inc., and the proceeds of which first mortgage were evidently paid to Superior Home Builders, Inc., or its order, upon directions of the mortgagors. The defendants Dorr admit those instruments

518

relating to that first mortgage were filled out when executed and were not signed in blank. The second mortgage trust deed, which is in issue in this case, purports to bear date also of August 30, 1949, and is for $5,000. The mortgagors purport to be Daniel M. Dorr and Grace E. Dorr, his wife, with the Chicago Title and Trust Company as trustee, that mortgage and note bear the purported signatures of Daniel M. Dorr and Grace E. Dorr, there is a certification of identification by the trustee on the note and mortgage, and those defendants admit Daniel M. Dorr signed those instruments, but say they were in blank when he signed, and they deny Grace E. Dorr signed them at all. The second mortgage trust deed is on an apparently regular printed form of Chicago Title and Trust Co., with certain necessary blank places filled in by typewriter. The acknowledgments on both the first and second mortgages were taken purportedly before Sue Brodahl, a Notary Public, on August 30, 1949, and the acknowledgment on the second mortgage trust deed is in the customary statutory form.

The defendants Dorr seek relief on this appeal upon the following claims: (1) the $5,000 note and second mortgage trust deed were forgeries so far as Grace E. Dorr is concerned and the documents were void; (2) that mortgage and note were signed in blank by Daniel M. Dorr and are void; (3) there is no evidence to sustain the finding that the Dorrs were indebted to Superior Home Builders, Inc. in the sum of $5,000 or any part thereof; and (4) the plaintiff was not an innocent holder for value of that note and mortgage since they were acquired by the plaintiff in January, 1956, from William Kracke, at which time they were in default as to principal and interest.

The plaintiff's theory is that the $5,000 second mortgage note and trust deed were given as part of the purchase price of the real estate, they were executed by

both the defendants Dorr, the payments thereon were made by those defendants, and those defendants are indebted for the balance due thereon as alleged in the complaint. The plaintiff urges that the Notary Public's certificate of acknowledgment on the second mortgage trust deed can be overcome only by clear, convincing, and satisfactory proof offered by disinterested witnesses, and that the findings of fact of a Master, when approved by the Chancellor, should not be disturbed by a reviewing court unless they are contrary to the manifest weight of the evidence.

The defendant Daniel M. Dorr testified that he signed the $5,000 second mortgage trust deed and note purportedly secured by it, but says both instruments were blank when he signed them and that the salesman for Superior Home Builders, Inc. took them with him after they were signed; he did not sign Mrs. Dorr's name to them; Mrs. Dorr's purported signatures on that note and mortgage looked like hers but he could not swear that such were; he never appeared before Sue Brodahl, a Notary Public; one Herman Gorschov, who was then connected with Superior Home Builders, Inc., had quoted him a price for the property of $24,000; he and Mrs. Dorr signed the purchase agreement with Superior Home Builders, Inc. in blank; he did not pay the $4,000 earnest money or any part thereof mentioned in the contract; he closed the purchase of the property with one Joseph M. Brickman, who was then associated with Superior Home Builders, Inc., in August, 1949; in the final closing agreement with Brickman he (Dorr) agreed to give a (first) mortgage in the sum of $19,000, the application, note, mortgage and letter of authorization for which he and Mrs. Dorr admittedly signed. As to the balance of $5,000, that is, the difference between that $19,000 (first) mortgage and the $24,000 purchase price which he testified to, he was to do some work drawing plans for Superior

520

Home Builders, Inc., buying furniture, etc., that would pay the $5,000, Dorr being an architect—licensed and practising as an Illinois architect for 15 years; when he moved into the property the house was not yet completed and, despite his many complaints, he completed it—he painted and decorated the entire inside, put rubber tile in the kitchen and countertops on the sink, had the floors sanded and put fireplace mantle tops on for both the basement and the first floor, finished up the quarter round around the basement, furnished and installed electric fixtures all over the house, hauled sixty yards of black dirt, and painted the exterior a second coat of paint; that he had no understanding with Superior Home Builders, Inc., or Brickman, that he (Dorr) was to do any of that work himself and be given an allowance on the sale price for such work. He further testified, however, that the only thing he did toward earning or paying the foregoing $5,000 was to go up to Mr. Brickman's brother's new home and have a floor covering concern measure the place for carpeting, and that he paid $6 on this account—evidently Superior Home Builders, Inc. did not refer to him any particular plans, drawing work, etc., as, according to him, was contemplated. He also said three payments of $60 each had been made by him on the note, but none had been made since March, 1950, when he stopped paying. Though he did not recall to whom the payments were made it is possible they were made to the plaintiff, and he made the payments after he was notified by the plaintiff that she was the holder of the note.

Joseph M. Brickman testified that he was associated at the time with Superior Home Builders, Inc.; he approved of the sale of the real estate to the Dorrs on behalf of Gorschov, a salesman who was with the company at that time; Gorschov, to the best of his knowledge, is now dead. He recalls, independently, that

Dorr was to pay $28,000 for the place. At the time Dorr signed the contract the building was not yet completed; Gorschov, Dorr, and he were present; Dorr said that he had limited funds and he desired to work out an arrangement whereby he could get the property with a minimum amount of cash and do some of the completion of the building himself; Dorr said he wanted to put in approximately $1,000 or $1,500 cash and do his own painting, tile work, and electric fixtures; being an architect, he (Dorr) had contacts in these various trades whereby he could save money and get a better selection than what the building called for "under our stated price," he (Brickman) finally agreed with Dorr to take a minimum amount of money; he thought Dorr paid $750 down; he agreed on an allowance to Dorr for the work Dorr was to do at Dorr's expense as the differential between the downpayment and the $4,000 earnest money, or in lieu of the $4,000 down payment; the allowance for such work was around $2,500 to cover painting, lighting fixtures, railing, tile and tile floors and kitchen cabinets; there are no records of what those purported allowances were, nor does the contract set forth such allowances; in addition, according to Brickman, Dorr was to execute a first mortgage in the amount of $19,000 and a second mortgage in the amount of $5,000; the $4,000 earnest money mentioned in the purchase agreement was not received by Superior Home Builders, Inc., and the provision for the $4,000 was not in the contract when it was signed. Brickman said that in his discussions with Dorr there definitely was reference to a second mortgage. Brickman said Sue Brodahl, the Notary Public, was employed by Superior Home Builders, Inc. in 1949 but he did not know where she was now.

Daniel M. Dorr then further testified that he did not pay Mr. Brickman or Superior etc. $750 or anything down on the purchase of the house; Brickman told him

that he (Brickman) would fix up the mortgage deal so that Dorr would not have to pay one single penny down; he was to get the house for the $19,000 first mortgage and the house was to be completed and he was to make the selections of the materials for the color of the tile in the kitchen and the counter tops; he wound up by paying for everything, which wasn't in the original agreement; the tile in the bathroom was paid for by Superior Home Builders, Inc.; he did not have a conversation with Gorschov about the difference between $19,000 and $24,000, and Gorschov was not present at the particular meeting at which Brickman and Dorr worked out the details.

The evidence shows the plaintiff Dorothy L. Krueger bought the second mortgage trust deed and note for $2,500 sometime before the first monthly payment was due thereon; she thereafter sold it to a customer, and she thereafter reacquired it in January, 1956 for value after the customer died. She or her office filled in some blanks in that note and mortgage and recorded the mortgage. She did not know the Dorrs or the circumstances as to the execution of the note and second mortgage. She has been engaged in the real estate and mortgage business for some years, d/b/a D. L. Krueger Co., and acquired the note and mortgage in the regular order of business. The only blanks in the second mortgage note and trust deed which she or her office filled in were as to the place of payment (her name and address), the document number of the previously recorded first mortgage to Lawn Savings and Loan Association, the letter "s" following "hand" and "seal" at the bottom of the mortgage in the phrase "Witness the hands and seals of Mortgagors, the day and year first above written," and in the acknowledgment on the mortgage the letter "s" following "person" and "name" and the word "are" in the phrase "the same persons whose names are sub-

scribed." On October 19, 1949 the plaintiff notified the defendant Daniel M. Dorr by letter to his residence of her purchase of the second mortgage note and trust deed, and sent him with the letter a duplicate copy of the note for him to mail in with each payment and on which the payments were to be recorded. On November 11, 1949 she received a letter on the business stationery of Daniel M. Dorr enclosing a check for an insurance premium on certain insurance on the improvements. The $60 monthly payments for December 1, 1949, January 1, February 1, and March 1, 1950 were made on the note and mortgage, leaving a $4,833.57 principal balance, and no payments have been made since. On May 12, 1950 the plaintiff by letter to Mr. Dorr (though he denied receiving it) requested payment of the April 1, and May 1, 1950 installments. In September, 1950 an earlier foreclosure suit was filed thereon, the defendants were served, but that suit was later dismissed for want of prosecution. The acknowledgment on the second mortgage trust deed had been filled out when she acquired it. The Notary Public, Sue Brodahl, she said, used to work for Superior Home Builders, Inc.

The defendant Grace E. Dorr admitted that she signed the application, note, and mortgage for the $19,000 first mortgage; admitted that the Dorrs took title to the premises; admitted that she signed the original agreement to buy the premises, which recited a consideration of $28,000, though she says it was in blank when she signed; admitted some payments were made by Mr. Dorr on the $5,000 note and mortgage in question here; but denied that she signed that note or second mortgage or authorized anyone to sign them for her or that the signatures were hers; she said all the negotiations concerning the purchase of the property were carried on by Mr. Dorr; she knew that in addition to paying Superior etc. $19,000 Mr. Dorr was

to pay off "the note"—the second mortgage note—by doing some work for Superior etc. but that he never received any such work, and in explaining why Mr. Dorr made certain payments on that note she said that he was to pay off the note by doing some work for Mr. Brickman but until it was so paid off he was going to make the payments; at another point, however, she said they purchased the property for $19,000 or $19,500—the amount of the first mortgage to Lawn Savings and Loan Association.

The exhibits in evidence include the purported second mortgage trust deed, bearing the admittedly genuine signature of the defendant Daniel M. Dorr and the purported signature of the defendant Grace E. Dorr; the purported $5,000 note secured thereby, bearing the admittedly genuine signature of the defendant Daniel M. Dorr and the purported signature of the defendant, Grace E. Dorr; the loan application, first mortgage to Lawn Savings and Loan Association, a $19,000 note secured thereby, and letter of authorization from the defendants Dorr to Lawn etc. to disburse those funds to Superior Home Builders, or its order, all bearing the admittedly genuine signatures of both of the defendants Dorr; and the Agreement of sale and purchase of August 30, 1949 between Superior Home Builders and the defendants Dorr bearing the admittedly genuine signatures of both of the defendants Dorr. The agreement of sale and purchase of August 30, 1949 was introduced by the defendants Dorr as a defendants' exhibit—the particular document so identified is not signed by Superior etc., but is signed by the defendants Dorr, and is evidently their purchasers' copy which presumably they've had in their possession since August 30, 1949—at least there is no evidence it has ever been out of their possession since its execution. It appears to be a mimeographed form, with certain blanks filled in by typewriter, including the

525

$28,000 purchase price, the $4,000 earnest money, the $5,000 note, and the $19,000 balance provisions, and on the particular document so identified the typing is evidently a carbon copy.

The Master made findings, which were later approved by the trial court, and which sustained all of the essential allegations of the plaintiff, to the effect that the defendants Dorr were indebted to Superior Home Builders, Inc. for $5,000, for which they executed their note of August 30, 1949 and their second mortgage trust deed as security, that the trust deed was acknowledged by them before a Notary Public, that the note and trust deed were identified by the trustee by a certain identification number, that the plaintiff later became the holder of the note and trust deed, that payments of $240 were made thereon, that a certain sum remains due, with interest, that the plaintiff has a valid lien thereunder for the amounts found due, subject to the first mortgage, and is entitled to foreclosure.

■■ It is settled that the findings of fact of the Master when approved by the trial court, which considered the evidence on exceptions taken thereto, will not be disturbed by a Court of review unless they are against the manifest weight of the evidence: Rose v. Dolejs (1953), 1 Ill.2d 280; Punzak v. DeLano (1957), 11 Ill.2d 117; Finley v. Felter (1949), 403 Ill. 372; Duncan v. Duncan (1903), 203 Ill. 461. The mere fact the evidence is conflicting in some respects does not mean the findings are against the manifest weight of the evidence. And the circumstances that there may be some evidence to the contrary does not mean that the findings of the Master and trial court as to the preponderance of the evidence should not be sustained.

The defendants Dorr first urge that the purported signatures of Grace E. Dorr on the $5,000 note and

second mortgage trust deed were forgeries and the documents were void.

 Under the Negotiable Instruments Law, so far as now material, Ch. 98, Ill. Rev. Stats. 1957, par. 43, where a signature is forged or made without authority on a negotiable instrument, it is wholly inoperative. A forged note is by the common law absolutely void, unless it has in some way been ratified by the payor: Vannatta v. Lindley (1902), 198 Ill. 40; Kolmar, Inc. v. Moore (1944), 323 Ill. App. 323; Murphy v. Schoch (1907), 135 Ill. App. 550. And under the Civil Practice Act, Ch. 110, Ill. Rev. Stats. 1957, par. 43(4), "the facts constituting any affirmative defense, such as . . . that an instrument or transaction is either void or voidable in point of law, or cannot be recovered upon by reason of any statute . . . and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint . . . and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer . . . ." The burden of proof, accordingly, as to the defendants' affirmative defenses here was on the defendants: Bauer v. Sawyer (1955), 6 Ill.App.2d 178.

 No testimony, however, expert or otherwise, was offered by the defendants in denial that Grace E. Dorr signed the instruments except hers. The second mortgage trust deed bears a certificate of acknowledgment before a Notary Public. Under the applicable statute, Ch. 30, Ill. Rev. Stats. 1957, par. 18, the acknowledgment or proof of any mortgage of real estate by a married woman may be made and certified the same as if she were a feme sole and shall have the same effect; mortgages of real estate may be acknowl-

527

edged or proven before certain Courts or officers, including notaries public (par. 19); no officer shall take an acknowledgment unless the person offering to make such acknowledgment shall be personally known to him to be the real person who and in whose name such acknowledgment is proposed to be made or shall be proved to be such by a credible witness (par. 23); the form of a certificate of acknowledgment is prescribed (par. 25); mortgages of real estate shall be recorded in the county where the real estate is situated (par. 27); and every mortgage required or entitled to be recorded, being acknowledged or proved according to the act, may be read in evidence without any further proof of execution thereof (par. 34). A certificate of acknowledgment by a Notary Public, as is here a part of the second mortgage trust deed, apparently regular in form and in compliance with the statute, cannot be overcome by the unsupported testimony of an interested party to the instrument; the certificate of acknowledgment is prima facie proof of the execution of the instrument; the burden is upon the party seeking to impeach the acknowledgment and it may be overcome only by clear, convincing, and satisfactory proof by disinterested witnesses; the certificate of acknowledgment, if in substantial compliance with the statute, may not be impeached except for fraud and imposition; the Notary Public, in taking the acknowledgment, acts judicially, or quasi-judicially, the duty is imposed on the Notary of ascertaining the truth of the matters about which he or she is to certify. Parties act on the faith of that certificate, and public policy, the security of titles, and the peace of society require that in the absence of fraud and collusion it be entitled to full credit: Graham v. Anderson (1867), 42 Ill. 514; Lickmon v. Harding (1872), 65 Ill. 505; Kerr v. Russell (1873), 69 Ill. 666; Duncan v. Duncan (1903), 203 Ill. 461; Finley v. Felter (1949), 403 Ill. 372; Curtis v.

528

Curtis (1947), 398 Ill. 442; Stone v. Stone (1950), 407 Ill. 66; Koepke v. Schumacher (1950), 406 Ill. 93. The Master and trial court by holding that the purported signature of Grace E. Dorr on the second mortgage trust deed was a genuine signature of Grace E. Dorr, or that she acknowledged the signature to be her own, also held, by inference, that her purported signature on the note secured thereby was necessarily also genuine, or adopted, ratified, or confirmed as hers, inasmuch as the second mortgage trust deed refers to a $5,000 indebtedness evidenced by a note of even date with the mortgage given by the mortgagors and secured under the trust deed, and inasmuch as a mortgage is merely an incident to the debt which it secures. The second mortgage trust deed expressly recites, among other things, that "the mortgagors are justly indebted to the legal holder or holders of the installment note hereinafter described . . . in the principal sum of Five Thousand and no/100 Dollars, evidenced by one certain installment note of the mortgagors of even date herewith, made payable to bearer and delivered, in and by which said note the mortgagors promise to pay the said principal sum and interest . . . ." The testimony of the defendant Grace E. Dorr, an interested party, is unsupported otherwise and does not overcome the certificate of acknowledgment of the Notary Public. The certificate has not been overcome by clear, convincing, and satisfactory proof by disinterested witnesses. There is no evidence of fraud or imposition. The defendant Daniel M. Dorr testified that Mrs. Dorr's purported signatures on the $5,000 note and second mortgage trust deed looked like hers, though she could not swear that such were; the only blanks therein which the plaintiff said she filled in did not include the signature of Grace E. Dorr; and there is no affirmative evidence that anyone else other than Grace E. Dorr signed her name thereto.

From the evidence we conclude that the defendants have not sustained the charge of forgery as to Grace E. Dorr.

 In their brief the defendants, in their points and authorities, next state, as a subpoint, that the mortgage and note, having been signed by Daniel M. Dorr in blank, were void. No authorities are cited in support thereof. In the argument part of their brief there is no argument thereon. Under the circumstances that subpoint may be, and is, considered as waived: Appellate Court Rule 7, Ch. 110, Ill. Rev. Stats. 1957, par. 201.7. Although the defendants have cited no authority or made any argument to support their claim that those instruments are void because, as Mr. Dorr testified, they were signed in blank by him, reference may be had to the case of Young v. Ward (1859), 21 Ill. 223, where the court said, p. 225:

". . . It is the settled doctrine, that if a party signs his name to a blank paper, and delivers it with authority to fill the blank above his signature with a note or bill for a particular amount, or to a specified person, and the person receiving it fills it for a larger amount, or to a different person, and it is passed in the course of business, without notice of the facts, the maker is bound by the instrument. . . . ."

And, under the Negotiable Instruments Law, Ch. 98, Ill. Rev. Stats. 1957, par. 34, "Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion,

530

it must be filled up strictly in accordance with the authority given and within a reasonable time."

We think the preponderance of the evidence shows, as to this, that the defendant Dorr by his conduct made Superior Home Builders, Inc., or their employees, or assigns, the agents of Dorr for this purpose, with implied authority to fill in the blank spaces, if there were any, in the $5,000 note and second mortgage trust deed at the time they were signed, or that Dorr was guilty of negligence in leaving some of the blanks unfilled, if some were left unfilled, at the time of signature, and cannot now complain under the circumstances. Where a person signs a negotiable instrument which is incomplete at the time because the amount is left blank, and delivers it to be used, the custodian of the paper has implied authority to fill in the amount: Merritt v. Boyden (1901), 191 Ill. 136. If any material blanks were filled up after their signature the defendants have not shown that such was not done pursuant to the prima facie authority of the person in possession and within a reasonable time. Beyond that, it seems incredible that a man of Mr. Dorr's age, intelligence, profession, and experience would sign in blank documents of the obvious importance of this note and second mortgage trust deed and deliver them for obviously intended use to a salesman for a stranger from whom he is buying a home and with whom he apparently had had no prior dealings. We believe that, under the circumstances, there is no substantial basis for finding that the two instruments, the note and second mortgage trust deed, were in fact signed by him in blank or were altered in any material manner after they were signed by him, although some immaterial blanks not affecting at all the substance of the obligations may have been filled in later, evidently to correct inadvertent and unimportant stenographic or clerical omissions.

531

■ ■ ■

The defendants next argue that there was no evidence to support the finding that they were indebted to Superior Home Builders, Inc. in the sum of $5,000. No authorities are cited in support thereof. The second mortgage trust deed is clear enough in and of itself—it expressly provides that the Dorrs, the mortgagors, having been previously so described ". . . are justly indebted to the legal holder or holders of the installment note hereinafter described, said legal holder or holders herein referred to as Holders of the note, in the principal sum of Five thousand and no/100 dollars, evidenced by one certain installment note of the mortgagors of even date herewith, made payable to bearer and delivered, in and by which said note the mortgagors promise to pay the said principal sum and interest . . ." and that ". . . the mortgagors to secure the payment of the said principal sum of money and said interest in accordance with the terms, provisions, and limitations of this trust deed, and the performance of the covenants and agreements herein contained, by the mortgagors to be performed, and also in consideration of the sum of one dollar in hand paid, the receipt whereof is hereby acknowledged, do by these presents, convey and warrant unto the trustee, its successors and assigns, the following described real estate and all of their estate, right, title, and interest therein, situated, lying and being in the City of Elmhurst, County of DuPage, and State of Illinois . . . ." The $5,000 installment note, ostensibly secured by that second mortgage trust deed, is also clear enough in and of itself, it expressly provides that ". . . For value received we promise to pay to bearer the principal sum of Five Thousand and no/100 dollars and interest . . ." and that ". . . The payment of this note is secured by trust deed, bearing even date herewith, to Chicago Title and Trust Company, trustee, on real estate in the County of DuPage, Illinois"

and that "This note is secured by trust deed subject to mortgage dated August 30, 1949, recorded as document # 576678, given to Lawn Savings and Loan Association." The defendants' own copy of the agreement of sale and purchase is reasonably clear in itself as to the substance of the transaction, though not all of the details as to carrying it into execution are spelled out specifically therein, it expressly provides for a price of $28,000, "$4,000.00 as earnest money upon execution of this contract and a further payment of Five Thousand and no/100ths ($5,000.00) dollars note . . . and agrees to pay the balance of said purchase price in the amount of Nineteen thousand and no/100ths ($19,000.00) Dollars to the seller as the work on the said building progresses. The purchaser shall place the balance of the purchase price in escrow or obtain a mortgage loan, at his own expense, to pay said balance . . . ." And the defendants' loan application to Lawn Savings and Loan Association for their $19,000 first mortgage expressly states that the sale price of the property is $28,000.

 After reviewing the evidence, documentary and oral, we think this contention is without merit. In whatever manner the Master and trial court may have analyzed the evidence—whether the documents alone were considered as entitled to greater weight than the oral testimony, or whether the oral testimony on behalf of the plaintiffs be accepted, or that on behalf of the defendants, and whether the price of the property was in fact $28,000 or $24,000—in any event, there is amply sufficient evidence to support the finding that the defendants were in fact indebted to Superior Home Builders, Inc. in the sum of $5,000 on this particular note and second mortgage, which has not been paid, in money or services, except to the extent of $240.

533

The defendants' last contention is that the plaintiff was not a bona fide purchaser or innocent holder since she reacquired the note and mortgage in January, 1956 from William Kracke at which time they were in default as to principal and interest. No authorities are cited in support thereof. This need not be discussed or determined because it would seem to be immaterial, under the circumstances, in the light of the foregoing, whether she was or was not a bona fide purchaser or innocent holder for value—she is the legal holder or bearer for value thereof.

The decree is not contrary to the manifest weight of the evidence, there is no error of law, and it will, therefore, be affirmed.

Affirmed.

WRIGHT, P. J. and SOLFISBURG, J., concur.